UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

B.K.A. o/b/o E.K.,

    Plaintiff,

v

PLYMOUTH-CANTON COMMUNITY
SCHOOLS,

    Defendant.
_____/

Judge Jonathan J.C. Grey
Magistrate Judge Elizabeth A. Stafford
No. 24-10590

| | |
|---|---|
| DORENE PHILPOT (P84063)<br>PHILPOT LAW OFFICE, PLLC<br>*Attorney for Plaintiff*<br>275 Bristol Lane<br>Livingston, TX 77351<br>(281) 989-2010<br>Fape4kids@gmail.com<br><br>CATHERINE M. MICHAEL (P76285)<br>*Attorney for Plaintiff*<br>Connell Michael, LLP<br>550 Congressional Blvd.<br>Suite 350-11<br>Carmel, IN 46032 | TIMOTHY J. MULLINS (P28021)<br>TRAVIS M. COMSTOCK (P72025)<br>GIARMARCO, MULLINS & HORTON, P.C.<br>*Attorneys for Defendant*<br>101 W. Big Beaver Road, 10th Floor<br>Troy, MI 48084-5280<br>(248) 457-7036<br>tmullins@gmhlaw.com<br>tcomstock@gmhlaw.com |

**OPPOSED VERIFIED MOTION AND BRIEF TO ENFORCE
MEDIATED SETTLEMENT AGREEMENT**

    Come now Plaintiffs and file their Opposed Verified Motion to Enforce

Mediated Settlement Agreement as follows:

1

## RELEVANT HISTORY

1. On March 8, 2024, Plaintiffs filed in this Court their Verified Complaint for Attorney Fees and Costs after prevailing in a special education due process administrative hearing in which they received remedies ordered by the Special Education Hearing Officer in February 2024 due to Defendant's violation of federal law, the Individuals with Disabilities Education Improvement Act. [ECF 1.]

2. Thereafter, the parties agreed to participate in mediation, which was scheduled to occur on May 20, 2024. However, Defendant's counsel came to the first mediation session without authority to settle the matter and the parties were not able to come to any agreement in the May 20, 2024, mediation.

3. The parties agreed to a convene a second mediation session on June 7, 2024.

4. Three attorneys (Travis Comstock, Daria Majewski and Lorie Steinhauer) participated in the five-hour mediation on behalf of Defendant, along with the school district Superintendent Monica Merritt.

5. At the second mediation session on June 7, 2024, the parties came to an Agreement that was memorialized in a document titled Mediation Agreement Terms Sheet in settlement of the Attorneys Fees action before this Court as well as multiple other potential and pending education-related matters involving the Plaintiff.

6. The Mediation Agreement Terms Sheet was entirely written by Defendant's counsel. (Exhibit 1.)

7. The Mediation Agreement Terms Sheet was signed by counsel for the school district, by the superintendent of the school district, by the Plaintiff parent and by her counsel and was sent by email to Plaintiff by the Defendant. (Exhibit 1 and 2.)

8. The email on June 7th, 2024, from Counsel for the Defendant, Daria Majewski, in addition to providing the signature of Defendant's counsel Travis Comstock and that of its Superintendent Monica Merritt provides, "The District agrees to make payment within 30 days." (Exhibit 2.)

9. The Mediation Agreement Term Sheet provides the following terms:

   - The Parties agree to resolve globally all complaints and claims for the amount of $350,000.

   - The amount above was for reimbursing attorney fees and educational expenses for Petitioner and Student.

   - Further terms to be detailed by the Parties in a Full Settlement and Resolution Agreement to be collectively drafted by the Parties.

   - The Full Settlement and Resolution Agreement will include standard terms and conditions related to confidentiality, waiver of pending lawsuits and known/should have known about at the date of the

execution of this Term Sheet.

10. There was clear mutual assent to the Agreement for settlement of the attorneys fees and reimbursement of educational expenses. Should there have been any uncertainties during the mediation, the Parties had ample opportunity, spanning five hours, to raise questions, seek clarifications, or for the Defendant to add additional terms to the Terms Sheet it drafted before signatures. Rather, the language clearly indicates that the additional terms will be "standard terms and conditions related to confidentiality, waiver of pending lawsuits and known/should have known about at the date of the execution of this Term Sheet" and that they would be drafted "collectively by the Parties," not unilaterally by Defendant.

11. Prior to the commencement of the mediation session, the Michigan Department of Education, providing the mediator for the parties, furnished all parties with a Special Education Mediation Services Statement of Understanding. This document was reviewed, agreed upon, and signed by all participants in May 2024, ensuring a clear framework and mutual expectations for the mediation process.

12. The Statement of Understanding noted that the parties agreed that: "An agreement can only become legally enforceable, however, if signed by both the parent and a representative of the agency who has the authority to bind

such agency. 34 CFR 300.506 (6) (ii)." (Exhibit 3.)

13. Both the Plaintiff parent (Rebecca "Becky" Krupa Arnold) and the representative of the agency (the superintendent) signed the agreement. (Exhibit 1). Thus, under the federal IDEA and under the agreed Statement of Understanding, the parties had a legally enforceable agreement written by counsel for Defendant and signed by the parties necessary pursuant to 34 C.F.R. 300.506 on the second session of mediation held on June 7, 2024.

14. As noted above in the Special Education Mediation Services Statement of Understanding, there is no legal requirement for a student to sign a settlement agreement concerning an IDEA dispute; the only requisite signatures are those of the parent and the agency representative.

15. The principles of contract law, namely offer and acceptance, were satisfied in this case. Legal counsel is expected to recognize that these elements are fundamental in constituting a legally binding contract.

16. On June 7, 2024, attorney Thomas Comstock indicated he would send a settlement agreement reflecting the agreed items on the Terms Sheet by Friday, June 14, 2024, but he did not do so.

17. On June 10, 2024, Defendant's counsel Comstock represented to a clerk of the court that a settlement had been reached in an email that states in relevant part: "The parties reached a settlement on the issues and have signed a term

5

sheet to that effect. The parties will be working this week to finalize a full settlement and release agreement that will include the voluntary dismissal of this case." (Exhibit 4.)

18. Additionally, Defendant's counsel reviewed and approved an unopposed motion filed by Plaintiffs on June 13, 2024, to postpone a planned June 20, 2024, Rule 26 conference to allow time for the settlement agreement to be circulated for signatures in the hopes that the matter would be dismissed prior to the Rule 26 conference. [ECF 11.]

19. Still not having received the promised agreement, Counsel Philpot sent an email on June 18, 2024, to ask Comstock why he still had not sent the agreement to Plaintiffs' counsel.

20. Later on June 18, 2024, counsel Comstock emailed a copy of a "Full Settlement and Resolution Agreement" that the parties had earlier agreed in writing should contain "standard terms and conditions related to confidentiality, waiver of pending lawsuits and known/should have known about at the date of the execution of this Term Sheet."  (Exhibit 1, para 4)

21. Unfortunately, upon review of the document sent by counsel Comstock on June 18, 2024, it was apparent that there were multiple additional burdensome and objectionable terms included in the written instrument that were never discussed during mediation, let alone agreed to in the Mediation Agreement

Terms Sheet written by counsel for Defendant and signed by the parties on June 7, 2024.

22. Counsel for the Petitioners was compelled to respond to the objectionable and onerous substantive provisions that were introduced post-mediation.

23. Thereafter followed a protracted exchange between the parties' counsel that lasted over the next few weeks. These negotiations, focused on the unexpected and unapproved additions, were marked by intense efforts by the Plaintiff's counsel to simply enforce the Mediation Agreement Term Sheet.

24. In response to the Defendant's introduction of "poison pill" terms, which were unilaterally added without prior negotiation, the Plaintiffs, as would be expected, demanded the removal of new and additional terms that went far beyond "standard terms and conditions related to confidentiality, waiver of pending lawsuits and known/should have known about at the date of the execution."

25. This approach by the Defendant not only undermined the mediation process but also demonstrated a disregard for previously agreed-upon discussions and indicates bad faith on the part of the Defendants.

26. The culmination of this dispute was marked by Counsel Comstock's communication on July 2, 2024, which articulated a stark ultimatum: If the Plaintiffs refused to consent to the settlement agreement containing the

7

multiple new and disputed, unagreed-upon terms, the Defendant would proceed to inform the Court of its intention to retract its approval of the Term Sheet dated June 7, 2024.

27. With no agreement on the language and a threat that if Plaintiffs do not succumb to Defendant's unilateral, burdensome terms, Plaintiffs had no choice but to expend even more time and resources and file this motion to enforce.

### BRIEF IN SUPPORT OF MOTION

28. The Mediation Agreement Term Sheet between Plymouth-Canton Community Schools and the Plaintiff Becky Krupa Arnold, contains four terms which are to "reimburse her attorney's fees and educational expenses for Petitioner and Student."

29. Counsel Comstock's threat to "withdraw" approval of the Term Sheet executed on June 7, 2024, is frivolous, groundless, without merit and unreasonably protracts the proceedings, which is prohibited under the federal IDEA, as explained below in the remedies section of this motion and brief.

30. It is also prohibited under state law: For the most part, parties cannot disavow a written, signed agreement. *Gojcaj v Moser*, 140 Mich App 828, 835; 366 NW2d 54 (1985). Settlement agreements normally should not be set aside and a party may not disavow an agreement that has been reduced to writing or

8

placed on the record merely because the party has "a change of heart." *Metropolitan Life Ins Co v Goolsby*, 165 Mich App 126, 128-129; 418 NW2d 700 (1987). See also *Vittiglio v Vittiglio*, 297 Mich App 391, 398 and 399; 824 NW2d 591 (2012).

### SETTLEMENT AGREEMENTS SUBJECT TO STATE LAW CONTRACT INTERPRETATION

31. An agreement to settle a pending lawsuit is in the nature of a contract and is governed by state legal principles applicable to the construction and interpretation of contracts. *Kloian v Domino's Pizza LLC,* 273 Mich App 449, 452; 733 NW2d 766 (2006) and *Walbridge Aldinger Co. v Walcon Corp.,* 207 Mich App 566, 571 (1994) and *Clark v Progressive Ins Co*, 309 Mich App 387, 394; 872 NW2d 730 (2015).

32. "A settlement agreement is a binding contract." *Dabish v Gayar,* 343 Mich App 285, 289 (2022) "To settle a lawsuit, there must be an offer and acceptance." *Id.* at 289-290.

33. An "offer" is "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Eerdmans v Maki,* 226 Mich App 360, 364; 573 NW2d 329 (1997). "Acceptance must be unambiguous and in strict conformance with the offer." *Id.*

34. "The essential elements of a contract are parties competent to contract, a

proper subject matter, legal consideration, mutuality of agreement, and mutuality of obligation." *Mallory v City of Detroit*, 181 Mich App 121, 127; 449 NW2d 115 (1989). All elements were met here.

35. When interpreting a contract, the examining court must ascertain the intent of the parties by evaluating the language of the contract in accordance with its plain and ordinary meaning. *In re Egbert R Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008).

36. If the language of the contract is clear and unambiguous, it must be enforced as written. *Id*. A contract is unambiguous, even if inartfully worded or clumsily arranged, when it fairly admits of but one interpretation. *Holmes v Holmes*, 281 Mich App 575, 594; 760 NW2d 300 (2008).

37. Every word, phrase, and clause in a contract must be given effect, and contract interpretation that would render any part of the contract surplusage or nugatory must be avoided. *Woodington v Shokoohi*, 288 Mich App 352, 374; 792 NW2d 63 (2010). [*McCoig Materials, LLC v Galui Constr, Inc*, 295 Mich App 684, 694; 818 NW2d 410 (2012).]

38. The bedrock of contract law is that "parties are free to contract as they see fit, and the courts are to enforce the agreement as written absent some highly unusual circumstance, such as a contract in violation of law or public policy." *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 51; 664 NW2d 776 (2003). In

fact, "[t]he notion, that free men and women may reach agreements regarding their affairs without government interference and that courts will enforce those agreements, is ancient and irrefutable." *Id*. at 52. Thus, "[t]he litigant who . . . asserts [a mistake of fact defense] to a stipulation freely entered into in open court carries a heavy burden of persuasion. Every presumption of judicial care, of professional competence, and of decretal stability is against the overthrow, in the appellate court, of such stipulation and of orders and decrees based thereon." *Wagner v Myers*, 355 Mich 62, 68; 93 NW2d 914 (1959).

39. There is a presumption that the parties understand and intend the language employed in their agreement. *Chestonia Twp v Star Twp*, 266 Mich App 423, 432; 702 NW2d 631 (2005). This Court must enforce a contract as written when there is only one possible interpretation. *Id*.

40. A trial court is permitted to presume at face value that the parties actually meant what they signed. *Rettig v Rettig*, 322 Mich App 750, 755-756; 912 NW2d 877 (2018).

41. If a contract is unambiguous, it must be interpreted in accordance with its plain meaning. *Shay v Aldrich*, 487 Mich 648, 660; 790 NW2d 629 (2010).

## COURT MUST ENFORCE EXCEPT WHEN THERE IS FRAUD, DURESS OR AMIGUITY

42. Although Defendant's counsel has not argued in the post-mediation weeks of

11

arguments back and forth among counsel that there exists fraud, duress or ambiguity, in the interests of efficiency, Plaintiffs point out that a trial court's authority to review a settlement agreement is limited because courts must enforce settlement agreements absent evidence such as fraud, duress or ambiguity. *Draves v Draves (In re Draves)*, 298 Mich App 745, 767-768, 828 NW 2d 83 (2012). *Massachusetts Indemnity & Life Ins Co v Thomas*, 206 Mich App 265, 268; 520 NW 2d 708 (1994).

43. If there is no such allegation, then a trial court's power is limited to the agreement's enforcement. "Indeed, if the language of the entire contract is clear and unambiguous, there is no room for construction by the courts, and in such case, the language must be held to express the intention of the parties and the court need not search for meanings nor indulge in inferences as to the intention of the parties." *DeVries v Brydges*, 57 Mich App 36, 41 (1974).

44. To the extent that Defendant suddenly alleges ambiguity, fraud or duress after Plaintiffs file this motion to enforce, Plaintiffs argue generally, the language of a contract is to be construed against its drafter. *Petovello v Murray*, 139 Mich App 639, 642 (1984). However, construing a contract against the drafter to resolve ambiguous contract language (called the rule of *contra proferentem*) is applicable only if the intent of the parties cannot be discerned through the use of all conventional rules of interpretation, including an

examination of relevant extrinsic evidence. *Klapp*, 468 Mich at 472.

45. Here the intent of the parties is clear and easily construed.

46. This means that when the language in a contract is unambiguous, the parties' intent is to be discerned from the actual language used in the contract.

47. The rule of construing against the drafter of the contract is in accordance with the 2 Restatement Contracts, 2d, § 206, p. 105, which provides: "In choosing among the reasonable meanings of a promise or agreement or a term thereof, that meaning is generally preferred which operates against the party who supplies the words or from whom a writing otherwise proceeds."

## RIGHT TO ATTORNEY FEES

48. Under the federal IDEA, counsel for the parents are entitled to prevailing party fees for their post-settlement efforts, in light of Defendant's unreasonable protraction of the proceedings.

49. Here, if the court rules in Plaintiffs' favor on the motion to enforce, the Defendant should be ordered to pay Plaintiffs' attorney fees incurred post-settlement to enforce the parties' settlement due to the actions / inactions of Defendant's counsel, who has unnecessarily escalated the time and costs and unreasonably protracted the proceedings. See Individuals with Disabilities Education Act (IDEA), 34 C.F.R. 300.517, 20 U.S.C. § 1400 et. seq., and the Michigan Administrative Rules for Special Education ("MARSE") M.C.L. §

340.1701, et seq.

50. Under the IDEA, the one who owns the rights to attorney's fees, costs, reimbursements, and expenses is the parent – and within an educational due process, these go to the parent (not the child).

51. IDEA provides that a court has discretion to award reasonable attorney's fees as part of the costs to the parents of a child with a disability that is a "prevailing party." 20 USC § 1415 (i)(3)(B)(i); 34 CFR 300.517 (a)(1)). These along with educational expenses are not "owned" by the child but are instead costs, reimbursements, and rights "owned" by the parent.

52. The IDEA grants parents independent, enforceable rights, which are not limited to procedural and reimbursement-related matters but encompass the entitlement to a free appropriate public education for their child. *Winkelman v. Parma City School Dist.*, 550 U.S. 516 (2007). ("We … find no reason to read into the plain language of the [IDEA] an implicit rejection of the notion that Congress would accord parents independent, enforceable rights concerning the education of their children. We instead interpret the statute's references to parents' rights to mean what they say: that IDEA includes provisions conveying rights to parents as well as to children.").

53. The right to initiate a due process hearing, as contained in 20 U.S.C. § 1415, the procedural protection guarantees of the IDEA, are rights that belong solely

to the parents. The IDEA repeatedly refers to the parents' due process complaint, the parent's right to a due process hearing, the parents' cause of action, and, once the hearing decision is rendered, the IDEA defines the prevailing party to be the parents – not the child. Reimbursements, costs, and other expenses are awarded to the parent and not the child.

54. In the case at hand, the Defendant resolved the attorney's fees case before the Court, as well as the attorney's fees in respect to the multiple other actions it wished to waive and provided the parent reimbursement for her additional reimbursement costs, in a mediation with a signed Agreement between the parties.

## PRAYER FOR RELIEF

Based on the above, Petitioners respectfully request:

a. <u>Either</u> that the Court order that the terms sheet executed by the parties be enforced as written with nothing more.

<u>Or</u>

b. That the Court order Respondent to draft a settlement agreement that contains simply the terms agreed to in the parties' mediation, including confidentiality and a waiver of claims known and unknown, and submit the agreement to the court for review so that the Court can verify that there are no additional unbargained-for terms included.

  c. Order that Plaintiffs' additional attorney fees related to this Action incurred after the June 7, 2024, mediation be paid by Defendant or Defendant's counsel within 30 days as Defendant and/or counsel for Defendant has unreasonably protracted the proceedings.

  d. Any other just and proper relief determined appropriate by the Court.

## CERTIFICATE OF CONFERENCE

Dorene Philpot states that on June 21, 2024, she sent an email to school district counsel Comstock to advise him:

> "We intend to enforce the signed agreement reached during mediation in federal court. The additions that were not negotiated and were added subsequently are neither appropriate nor ethical, nor were they contemplated by the agreement negotiated, mediated, and agreed upon.
>
> If these provisions were important to your client, why were they not mentioned in the agreement that Respondents' counsel themselves drafted on the second day of mediation? This additional session was necessitated because the decision-makers needed were not included by the respondent in the first session. You already have a copy of this draft because you wrote it.
>
> You may need to explain these extra provisions to the federal court judge, as they were not discussed, agreed upon, or included in the original writing.
>
> Please inform us by noon on Monday so that we can file any necessary motion to resolve this matter. Thank you."

Thereafter, my co-counsel and I engaged in a series of emails with Comstock

and the other two co-counsel in the underlying matter on various subsequent dates over the course of several weeks on the same subject.

In addition, my co-counsel, Catherine Michael, engaged in a phone call with Comstock on June 27, 2024, to continue to further discuss the matter.

All efforts were to no avail.

*s/Dorene Philpot*
Dorene Philpot (P84063)

Attorney for Plaintiffs


Respectfully submitted,

*s/Dorene Philpot*
Dorene Philpot (P84063)
Philpot Law Office, PLLC
275 Bristol Lane
Livingston, Texas 77351
(281) 989-2010
Fape4kids@gmail.com

Catherine M. Michael (P76285)
*Attorney for Plaintiff*
Connell Michael, LLP
550 Congressional Blvd.
Suite 350-11
Carmel, IN 46032

*Attorneys for Plaintiffs*

Verification

*[signature: Rebecca Arnold]*

Becky Arnold, Plaintiff parent

## CERTIFICATE OF ELECTRONIC SERVICE

Dorene Philpot states that on July 8, 2024, she did serve a copy of this motion and brief via the United States District Court electronic transmission.

*s/Dorene Philpot*
Dorene Philpot (P84063)
Philpot Law Office, PLLC
275 Bristol Lane
Livingston, Texas 77351
(281) 989-2010
Fape4kids@gmail.com

Attorney for Plaintiffs