UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

B.K.A. o/b/o E.K.,

      Plaintiff,

v

PLYMOUTH-CANTON COMMUNITY
SCHOOLS,

      Defendant.

_____/

Judge Jonathan J.C. Grey
Magistrate Judge Elizabeth A. Stafford
No. 24-10590

DORENE PHILPOT (P84063)
PHILPOT LAW OFFICE, PLLC
*Attorney for Plaintiff*
275 Bristol Lane
Livingston, TX 77351
(281) 989-2010
Fape4kids@gmail.com

CATHERINE M. MICHAEL (P76285)
*Attorney for Plaintiff*
Connell Michael, LLP
550 Congressional Blvd.
Suite 350-11
Carmel, IN 46032

TIMOTHY J. MULLINS (P28021)
TRAVIS M. COMSTOCK (P72025)
GIARMARCO, MULLINS & HORTON, P.C.
*Attorneys for Defendant*
101 W. Big Beaver Road, 10th Floor
Troy, MI 48084-5280
(248) 457-7036
tmullins@gmhlaw.com
tcomstock@gmhlaw.com

**DEFENDANT PLYMOUTH-CANTON COMMUNITY SCHOOLS'
RESPONSE TO PLAINTIFFS' MOTION AND BRIEF TO ENFORCE
MEDIATED SETTLEMENT AGREEMENT**

Defendant Plymouth-Canton Community Schools ("the District") objects in

part to Plaintiffs' Opposed Verified Motion and Brief to Enforce Mediated

Settlement Agreement ("Motion to Enforce") (ECF No. 16) but agrees in principle

that the Court should and must (1) approve the settlement to ensure it is in the best interest of Plaintiff E.K., a minor, who is the beneficiary of the net proceeds after payment of attorney fees, and (2) require that those funds should be protected through placement in a restricted trust account or otherwise overseen by an appropriate fiduciary, and in support states as follows:

1.      The parties engaged in voluntary facilitated mediation on May 20, 2024. Contrary to Plaintiffs' claim, the District's Superintendent was present and had authority to settle.

2.      The parties were unable to reach an agreement and mutually continued the mediation to June 7, 2024 to allow the District to confer regarding attempting to mediate only the issue of attorney fees rather than a "global" settlement the parties attempted on May 20.

3.      The parties reached a "global" settlement on June 7. The parties signed a Term Sheet agreeing to the amount of the settlement but expressly agreeing to collectively future drafting of a "Full Settlement and Resolution Agreement" ("Agreement"). (ECF No. 16-4, PageID.185).

4.      The parties executed the Term Sheet on June 7 and agreed to exchange drafts of the Agreement.

5.    The clear and unambiguous language of that "Term Sheet" stated that "**[f]urther terms**" beyond the amount of the settlement were **"to be detailed** by the Parties" in the Agreement. (Id., 3rd bullet point) (emphasis added).

6.    In addition to these "**[f]urther terms**", the Agreement was to include standard terms regarding confidentiality and releases regarding pending actions in federal and state court and other non-IDEA claims the Plaintiffs' asserted in the underlying due process complaint or knew or should have known of at the time of the execution of the Agreement. (Id., 4th bullet point).

7.    The District therefore agrees that pursuant to general contract principles (see ECF No. 16, PageID.166-68), the Term Sheet required the collective drafting of the Agreement and that it was the parties **expressed intent** in the third bullet point of the Term Sheet that the Agreement would include "**[f]urther terms**" proposed and then negotiated by the parties.

8.    The "**[f]urther terms**" the District proposed are therefore not "burdensome and objectionable" (ECF No. 16, PageID.163), "unexpected [or] unapproved" (Id., PageID.164), or " 'poison pill' terms" (Id.), and certainly were not "bad faith" by the District as Plaintiffs assert. (Id.).

9.    In light of the express agreement to propose "**[f]urther terms**", the District offered at the June 7 continued mediation to prepare the first draft of the Agreement. Plaintiffs assented to this process.

10. The District provided the Plaintiffs' counsel with a draft Agreement containing proposing "**[f]urther terms**" as agreed to in the Agreement. (Exhibit A, District's June 14, 2024 draft Agreement).

11. Plaintiffs' counsel reviewed the District's proposed "**[f]urther terms**", suggested changes to those terms, and proposed their own "**[f]urther terms**". (Exhibit B, Plaintiffs' June 19, 2024 redline draft (Plaintiffs' changes in yellow highlight)). By proposing "**[f]urther terms**" of their own, Plaintiffs clearly acknowledged and admitted that appropriateness of the District proposing its own further terms.

12. The parties then exchanged further revisions to the collectively drafted "**[f]uther terms**" on June 21, 25, 26, 27, and July 2. These email exchanges included the parties' respective legal support for the inclusion or exclusion of certain "**[f]urther terms**".

13. Following the exchange of these respective drafts, the parties remained at an impasse with respect to two "**[f]urther terms**": (1) whether this Court must approve the settlement since it (A) involved funds going to E.K. and (B) included the release of E.K.'s claims (Exhibit A, p. 3, ¶ 4), and (2) whether the net proceeds to E.K. for future educational services in lieu of a free and appropriate education from the District should be put into a trust or other restricted account pursuant to state law and court rules as well as decisions by this Court (id., p. 4, ¶ 6).

14.     The Plaintiffs then filed their Motion to Enforce.

15.     First, binding precedent holds that any settlement involving a minor must be approved by the Court to determine that it is in the best interests of the minor. *Dean v. Holiday Inns, Inc.*, 860 F.2d 670, 673 (6th Cir. 1988) (applying Fed. R. Civ. P. 41 regarding stipulated dismissal) (Noting "the general rule [ ] that settlement of a minor's claim or agreements or waivers affecting a minor's rights or interests are always subject to approval or amendment by the court with jurisdiction to pass on such agreements or actions" and this requires "[i]ndependent investigation by the court . . . .") (citation omitted); *Green v. Nevers*, 111 F.3d 1295, 1301-02 (6th Cir. 1997) (Courts must make "an independent determination that the settlement was in the minor's best interest.").

16.     Decisions of this Court, other decisions in this Circuit, and decisions from other Circuits have applied this mandate in a variety of cases including those stemming from IDEA related claims. See, e.g., *Kiel by Kiel v. Barton*, No. 09-CV-15053, 2011 WL 13206189, at *1 (E.D. Mich. Jan. 31, 2011) (citing *Dean* and *Green*); *Oliva v. United States*, No. 1:15-CV-1060, 2016 WL 7665536, at *2 (W.D. Mich. Dec. 22, 2016), *report and recommendation adopted*, No. 1:15-CV-1060, 2017 WL 76914 (W.D. Mich. Jan. 9, 2017) (citing *Dean* and *Green* when applying Fed. R. Civ. P. 17(c)); *V.R. by & through J.T. v. Univ. Place Sch. Dist.*, No. 3:21-CV-05318-LK, 2022 WL 2116602, at *2 (W.D. Wash. June 13, 2022) (When

5

considering settlement of IDEA claims under Fed. R. Civ. P. 17 and local court rule, "the Court's special duty requires it to '"conduct its own inquiry to determine whether the settlement serves the best interests of the minor."'" (citation omitted); *J. P. as next friend of A.W. v. Elmore Cnty. Bd. of Educ.,* No. 2:19CV636-MHT, 2022 WL 357496, at *1 (M.D. Ala. Feb. 7, 2022) (IDEA, ADA, and § 504 claims). *Cf. Williams v. City of Flint*, No. 06-10427, 2008 WL 220626, at *1 (E.D. Mich. Jan. 25, 2008).

17.     As the District explained to the Plaintiffs during the exchange of drafts of the Agreement, this well-established body of case law is clear that this Court must review the Agreement and determine if it is in the best interests of E.K.

18.     Another reason why the Court must review and approve the settlement is that agreed that E.K. was releasing her IDEA and non-IDEA claims (e.g., ADA, § 504, Title IX, and state law claims) in exchange for the consideration of the net proceeds of the settlement following payment of attorney fees and costs. (Exhibit B, p. 2, ¶ C; p. 3, ¶ 1.c.).

19.     Michigan law generally holds that a parent cannot waive the claims of a minor. *Woodman ex rel. Woodman v. Kera LLC*, 486 Mich. 228, 238, 240; 785 N.W.2d 1 (2010) ("[A] parent is without authority to waive the rights of the child."). See also *Newton v. Progressive Marathon Ins. Co.*, ___ Mich. App. ___, 2024 WL 56008, at *8 (Mich Ct App, January 4, 2024) (Noting that "the Michigan Supreme

Court held that parents have **no authority to waive, release, or compromise a claim** belonging to their child.") (citing and distinguishing *Woodman* on other no-fault statutory grounds; emphasis added).

20.    This Court recently examined *Woodward* when holding that class-action plaintiffs in the Flint water litigation could not waive or release a minor's claims without either "explicit statutory permission" (e.g., *Newton* under Michigan's No-Fault Act) or with "strict court oversight." *In re Flint Water Cases*, 558 F. Supp. 3d 459, 494 (E.D. Mich. 2021).

21.    Therefore, since B.K.A. cannot waive E.K.'s current or other known or should have known claims, the provision of MCR 2.420(B) for the appointment of a conservator where a settlement is entered into by a minor will protect E.K.'s interest by having the probate court approve B.K.A., or other suitable person, as conservator and grant her the authority to so bind E.K.

22.    Further, Michigan local court rule MCR 2.420 provides the procedures for "the entry of . . . a settlement . . . in an action brought for a minor . . . by a next friend . . . ." MCF 2.420(A). This requires the appointment of a guardian ad litem if the next friend, as here, claims to share in the settlement. MCR 2.420(B)(2). And the Rule requires that if the settlement pays a minor over $5,000 immediately then "a conservator must be appointed on behalf of the minor." MCR 2.420(B)(4). See also *In re Flint Water Cases*, 558 F. Supp. 3d at 494.

23.     Contrary to Plaintiffs' assertions, this Rule is not restricted to personal injury or wrongful death claims because the Rule's plain language states that it applies to any settlement involving a minor "**or** where a minor" is to receive funds from a wrongful death claim. *Id*. (emphases added). The disjunctive "or" being ignored by the Plaintiffs.

24.     While some courts have held that federal courts are not bound to apply MCR 2.420, *James v. LR Vincent Truck & Serv.*, No. 2:19-CV-64, 2021 WL 5569694, at *1 (W.D. Mich. July 29, 2021) (not applying MCR 2.420 because court's duty to protect minor sufficient), other courts have applied the Rule to settlements involving minors, *In re Flint Water Cases*, 571 F. Supp. 3d 746, 768–69 (E.D. Mich. 2021).

25.     Thus, with respect to the first disputed "**[f]urther term[ ]**", under binding Sixth Circuit precedent, courts evaluating the bests interests of a minor under either Fed. R. Civ. P 17 or 41, or courts considering the best interests of a minor under MCR 2.420, this Court as a matter of settled law is duty bound to consider the parties' Agreement to determine if the settlement is in the best interest of E.K. and then to either (1) require state probate court approval of B.K.A. as conservator for E.K. for the net proceeds and to have the authority to bind E.K. to a

release of known or should have known claims or (2) expressly grant B.K.A. that authority[1] to so bind E.K. in a written order of this Court approving the settlement.

26.     Furthermore, because the Term Sheet Plaintiffs signed expressly required the parties to draft an additional document (the Agreement) that included "**[f]urther terms**", their request for attorney fees incurred while the parties exchanged drafts of such terms in good faith should be rejected. Counsel for the District cannot have "unnecessarily escalated the time and costs [or] unreasonably protracted the" (ECF No. 16, PageID.170, ¶ 49) finalization of the Agreement when the clear and unambiguous contractual language of the Term Sheet permitted and required the exchange of "**[f]urther terms**" by the parties.

27.     The second of the disputed "**[f]urther terms**" was whether the net proceeds after payment of attorney fees and costs should be placed into a trust account or other restricted financial vehicle to ensure that it is used for E.K.'s benefit to secure future educational services in lieu of a free and appropriate education from the District as well as consideration for E.K.'s release of known and unknown IDEA and non-IDEA claims.

---

[1] See, e.g., *Mitchell v. SoftPlay, LLC*, No. 13-14125, 2014 WL 12662246, at *2 (E.D. Mich. Dec. 23, 2014) ("It is further **ORDERED** that plaintiff Katie Mitchell, as Next Friend of R.R., a minor, is hereby authorized and empowered to settle and compromise any and all potential claims arising out of the plaintiffs' claim against the defendant.").

28.     Courts have observed that further protection of settlement proceeds for the benefit of a minor is necessary "when it appears the minor's general representative has interests that may conflict with the minor's interests." *Williams v. City of Flint*, No. 06-10427, 2008 WL 220626, at *1 (E.D. Mich, January 25, 2008) (collecting cases). See also *Mitchell v. SoftPlay, LLC*, No. 13-14125, 2014 WL 12662246, at *1 (E.D. Mich. Dec. 23, 2014) (appointing guardian ad litem for minor where the settlement called for payment to the minor's parent). Courts have also approved settlements where the funds benefiting a minor are paid to a conservator or guardian of the minor because such "would serve the best interests of" the minor. *Y.M. by & through Nancy P. v. Beaumont Unified Sch. Dist.*, No. 519CV01048FLASPX, 2022 WL 784557, at *1 (C.D. Cal. Mar. 14, 2022)

29.     During the parties' exchange of drafts of the Agreement, and here in their Motion to Enforce (ECF No. 16, PageID.171, ¶ 50), Plaintiffs contended that B.K.A. "owned" all the net proceeds from the settlement amount. The Plaintiffs did not cite then or here in their Motion to Enforce any case law recognizing this novel claim. Particularly in the context of this case where the net proceeds were intended to benefit E.K. securing future educational services in lieu of FAPE from the District and to secure compensatory education previously provided by the District ordered

10

by the ALJ following the underlying due process hearing.[2] Moreover, the net proceeds were in consideration of E.K.'s release of pending administrative complaints as well as any other known or unknown IDEA or non-IDEA claims.

30.    Contrary to Plaintiffs' assertions, courts have rejected the argument that IDEA settlement benefiting a minor's claims are "owned" by the parent. For example, in *Univ. Place Sch. Dist.*, the court rejected the parent's claim there that "under IDEA, all rights are vested in parents *only*, and not in the child[.]" 2022 WL 2116602, at *2 (emphasis original). The court explained that "the Supreme Court has made clear that IDEA includes provisions conveying rights to parents *as well as to children.*" *Id*., (quoting *Winkelman ex rel. Winkelman v. Parma City School District*, 550 U.S. 516, 521 (2007)) (emphasis original). Thus, while a parent may assert independent claims, the claims in that case were the minor's, not the parents.

_____

[2] Plaintiffs attempt recharacterize the nature of the net proceeds by asserting in their Motion that the net proceeds are for reimbursing B.K.A. However, contrary to that position here, the Plaintiffs' first redline draft of the Agreement inserted language stating that the "parties intend" that the net proceeds after payment of attorney fees go towards "securing educational services for the student" – i.e., forward looking. (Exhibit B, p. 4, ¶ 5). This aligns with the parties' intent during mediation that the settlement amount was divided into three categories: attorney fees at issue in this litigation, compensatory education for E.K. provided for in the due process hearing, and funds to allow E.K. to secure educational services elsewhere in lieu of FAPE from the District. (Id., p. ¶ 7 ("B.K.A. affirmatively warrants, represents, and affirms that she will seek FAPE for E.K. from another source and agrees to permanently withdraw E.K. from" the District)).

31.     This persuasive analysis should be followed here. The claims resolved

in the underlying due process hearing belonged to E.K. (See ECF No. 1-2, PageID.11

(listing 4 issues alleging the District violated E.K.'s rights to FAPE)). The two

claims B.K.A. asserted in that underlying hearing were for reimbursement of E.K.'s

temporary stay at a residential facility and an alleged violation of her procedural

rights, claims the ALJ specifically denied. (Id.; id., PageID.35, PageID.40). See also

Exhibit B, p. 4, ¶ 5 (Plaintiffs' added term admitting that the parties intended the

settlement amount in part to be "for securing educational services for [E.K.]").

32.     The claims to be released also belong to E.K. In the underlying due

process complaint, E.K. asserted claims under the ADA and § 504. Allegations in

the due process complaint alleged bullying. E.K. also asserted to the District she may

have a claim under Title IX for alleged sexual harassment by a peer. In recognition

of these potential or asserted claims, the parties agreed to the release language stating

that E.K. (as included in the term "Plaintiff") released "[a]ny claims made, or that

could have been made, pursuant to any state or federal statute, including, but not

limited to," constitutional claims, ADA or § 504 claims, Title IX claims, and state

law claims.

33.     Because the net proceeds after payment of attorney fees was solely "for

securing educational services for" E.K and for her release of known or should have

known IDEA or non-IDEA claims, the net proceeds are to benefit E.K. They are not "owned" by B.K.A.

34.     As such, as other courts have directed and MCR 2.420 requires, the net proceeds should be protected to ensure they are used for the best interest of E.K., i.e., to secure both compensatory education and educational services in the future from a source other than the District. And since it is possible that B.K.A.'s interest in the net proceeds could conflict with E.K.'s best interest of securing FAPE and other educational services in the coming years, a conservator or some other court supervised person should be appointed to safeguard the net proceeds for the benefit of E.K. MCR 2.420(B)(2), (4).

35.     In sum, the parties' impasse centers on two simple issues: (1) whether the Court must approve the settlement since it involves funds benefiting a minor and the release of that minor's claims they know or should know of, and (2) whether it is in E.K.'s best interest to have the net proceeds deposited into a trust account in her benefit for securing future educational opportunities or to have B.K.A. appointed as a conservator for that purpose. Based on the foregoing binding and persuasive case law and the relevant Michigan court rule and court decisions, the answer to both is yes.

36.     Thus, the Court should deny the Plaintiffs' effort to ignore the plain

language in the Term Sheet and instead consider and approve the District's last draft

of the Agreement (Exhibit C).

Respectfully submitted,

/s/ TRAVIS COMSTOCK
TIMOTHY J. MULLINS (P28021)
TRAVIS M. COMSTOCK (P72025)
GIARMARCO, MULLINS & HORTON, PC
Attorneys for Defendant

DATED: July 22, 2024

14

## <u>CERTIFICATE OF ELECTRONIC SERVICE</u>

TRAVIS COMSTOCK states that on July 22, 2024, he did serve a copy of the **Defendant's Response To Plaintiffs' Motion And Brief To Enforce Mediated Settlement Agreement** via the United States District Court electronic transmission.

/s/ TRAVIS COMSTOCK
TRAVIS COMSTOCK (P72025)
GIARMARCO, MULLINS & HORTON, PC
Attorneys for Defendant
101 W. Big Beaver Road, 10th Floor
Troy, MI 48084-5280
(248) 457-7036
tcomstock@gmhlaw.com