UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

B.K.A. and E.K.,

      Plaintiffs,

v.

PLYMOUTH-CANTON
COMMUNITY SCHOOLS,

      Defendant.

Case No. 24-cv-10590

Honorable Robert J. White

---

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEY FEES

This matter is before the Court upon Plaintiffs' motion for attorney fees incurred after June 7, 2024. (ECF No. 32).  The parties settled this case in December 2024, but they could not agree on these fees, and the Court retained jurisdiction to rule on this limited issue. (ECF Nos. 26, 30; *see also* docket entry for April 17, 2025).  The Parties fully briefed the motion and the Court will decide it without oral argument pursuant to Local Rule 7.1(f)(2).  For the following reasons, the Court grants in part and denies in part the motion.  Specifically, while Plaintiffs are entitled to fees, their request is reduced by $1,188.95.

## I.      Background

Plaintiffs, a disabled child and the child's parent, and the defendant school district initially agreed to settle this IDEA (Individuals with Disabilities Education Act) action on June 7, 2024.  At the time, they executed a signed writing including essential terms of the settlement and agreed that a final settlement agreement would include additional terms and conditions typical in these types of cases.  But Plaintiffs objected to additional terms Defendant proposed and moved for the Court to enforce the settlement without any additional, not-bargained-for terms.  The key disputed terms at issue involved whether (1) the Court had to approve the settlement as in E.K.'s best interests and (2) the settlement funds intended for E.K.'s benefit had to be placed in a trust or other restricted account. (*See* ECF Nos. 16, 18-19, 20).

Following a December 6, 2024, settlement conference before the Court, the parties agreed to various terms to (1) resolve the motion to enforce and (2) dismiss the case.  Specific to the disputed additional terms, the court's stipulated order of dismissal stated that "the Release And Settlement Agreement ('Agreement') signed by the parties on December 9, 2024, is in the best interests of E.K. and any sums due under the terms of the Agreement will be paid as set forth in the Agreement for educational needs of E.K. and the agreed attorney fees." (ECF No. 26, PageID.306). The parties therefore agreed that the funds need not be placed in a trust or other restricted account, but only where (1) the Court approved the settlement as in E.K.'s

best interests and (2) any funds (excepting attorney fees) were earmarked for E.K.'s educational needs only.

The present motion is for Plaintiffs' attorney fees incurred after June 7, 2024, with any earlier fees already accounted for in the parties' settlement.[1]  The fees at issue therefore relate to Plaintiffs' motion to enforce, the efforts to reach a final settlement, and this fee dispute.  Plaintiffs specifically seek an order awarding them $72,257.60 in costs and fees. (ECF No. 32, PageID.321, 338-54).

Defendant first counters that Plaintiffs' fees should be capped at $16,748.00, representing the work spent negotiating settlement from June 8, 2024, until Plaintiffs filed the motion to enforce, "because Plaintiffs' counsel unreasonably and unnecessarily protracted the matter by insisting for months on excluding terms that they **readily agreed to** in substantially similar form following a short mediation session with this Court."  Defendant essentially faults Plaintiffs' counsel for unnecessarily engaging in a "fee for fees" dispute and seeks to exclude any fees incurred by this conduct. (ECF No. 33, PageID.464-66 (emphasis in original)). Defendant alternatively argues that Plaintiffs' fees should be capped at $20,000.00 to reflect what the Sixth Circuit deems reasonable—specifically, in comparison to

---

[1] The parties tried to resolve this limited fee dispute at an April 17, 2025 settlement conference, but this was unsuccessful. (*See* docket entry for April 17, 2025).

3

fees incurred at the merits stage of litigation—in fee for fees disputes. (ECF No. 33, PageID.466-67).

Next, Defendant argues that if the fees are not capped, they should be reduced (1) by $9,480.00 for duplicate and unnecessary billing on Plaintiffs' simple motion to enforce, (2) by $3,673.50 to exclude billing for unrelated matters, and (3) by $9,788.10 to exclude fees to pay the third attorney Plaintiff unnecessarily added in this case. Defendant therefore argues that the total fees should be reduced by $22,941.60, to $49,316.00. (ECF No. 33, PageID.467-70).

## II.    Legal Standards

"There is no common law right to attorney's fees." *McQueary v. Conway*, 614 F.3d 591, 596 (6th Cir. 2010). "Under the American Rule, the general practice is not to award fees to prevailing parties absent explicit statutory authority." *Id.* at 596-97 (cleaned up). The IDEA explicitly states that "the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to the prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I).

"Plaintiffs may be considered prevailing parties for purposes of attorney fees if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Berger v. Medina City Sch. Dist.*, 348 F.3d 513, 526 (6th Cir. 2003) (cleaned up). "The touchstone of this inquiry is the material alteration of the legal relationship of the parties." *Id.* "And the change must

have been ordered by the court, rather than achieved 'because the lawsuit brought about a voluntary change in the defendant's conduct.'" *Doe v. Univ. of Mich.*, 78 F.4th 929, 951 (6th Cir. 2023) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 601 (2001)).

"The starting point" in determining reasonable fees is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Troy Sch. Dist. v. Boutsikaris*, 317 F. Supp. 2d 788, 791 (2004) (cleaned up). But "there remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the results obtained." *Id.* (cleaned up). "The key requirement for an award of attorney fees is that the documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 553 (6th Cir. 2008) (cleaned up).

In addition, the IDEA prohibits reimbursement for services performed after a written, timely settlement offer to a parent if the parent rejects the offer and fails to obtain more favorable relief. 20 U.S.C. § 1415(i)(3)(D)(i). And a fee award must be reduced, as relevant here, when a court finds that (1) the parent or parent's attorney "unreasonably protracted the final resolution of the controversy or (2) "the time

spent and legal services furnished were excessive considering the nature of the action or proceeding." 20 U.S.C. § 1415(i)(3)(F).

## III.   Analysis

As an initial matter, the Court concludes that Plaintiffs are prevailing parties generally entitled to reasonable attorney fees with respect to this matter.[2]  Critically, the motion to enforce disputed two specific terms proposed by Defendant: that (1) the Court had to approve the settlement as in E.K.'s best interests and (2) the settlement funds intended for E.K.'s benefit had to be placed in a trust or other restricted account.  And although the final settlement did not dispense with these requirements entirely, Plaintiffs were successful in avoiding the imposition of any trust or restricted account over the settlement funds, which would have entailed additional burdens and costs.

Plaintiffs therefore succeeded on a significant issue and achieved some of the benefit sought in this case and, more specifically, through the motion to enforce. Similarly, Plaintiffs ultimately obtained more favorable relief than offered by Defendant's proposed additional terms, even if they did not obtain the totality of relief sought in moving to enforce the settlement without any of the additional terms.

---

[2] Although the Court refers to Plaintiffs generally here for ease of reference, only B.K.A., the parent, is technically entitled to recover attorney fees under the applicable statute.

Further, because the Court approved the final settlement and retains the power to enforce its terms, Plaintiffs' success should be considered court ordered rather than the result of a voluntary change in Defendant's conduct. *See Doe*, 78 F.4th at 953 ("some settlement agreements may confer prevailing-party status if sufficiently analogous to a consent decree") (citing *T.D. v. LaGrange Sch. Dist. No. 102*, 349 F.3d 469, 478 (7th Cir. 2003)); *Barrios v. Cal. Interscholastic Fed'n*, 277 F.3d 1128, 1134-35 n.5 (9th Cir. 2002) (holding that a settlement agreement contained sufficient judicial oversight to confer prevailing-party status); *James T. & Lou Ann T. v. Troy Sch. Dist.*, 407 F. Supp. 2d 827, 831 (E.D. Mich. 2005) (settlement agreement analogous to consent decree when incorporated into a local hearing officer's order of dismissal).

Next, the Court rejects that the fees at issue must be capped in either way that Defendant claims.  First, to the extent Defendant faults Plaintiffs for unreasonably and unnecessarily protracting resolution of this case where they ultimately agreed to substantially similar terms as those contested via the motion to enforce, Plaintiffs' conduct was reasonable.  As discussed, their effort to avoid the key terms at issue was partially successful given that the final settlement did not require a trust or other restricted account to manage the settlement funds.  And the Court does not find that any of Plaintiffs' positions in moving to enforce or negotiating the final settlement were frivolous or otherwise unreasonable.

Moreover, none of Defendant's cited cases support capping fees here.  First, *McQueary*, 614 F.3d 591, stated that "fee inquiries should not generate satellite litigation." *Id.* at 599; *see also id.* at 598 ("the idea behind [42 U.S.C.] § 1988 is to award fees to deserving parties, not to generate satellite disputes over fees, which prompt a second major litigation") (cleaned up).  But *McQueary* essentially involved facts and legal issues distinguishable from those here—specifically, "whether or when the winner of a preliminary injunction may be treated as a 'prevailing party' entitled to attorney's fees," *id.* at 596—and nothing therein specifically addresses capping fees or fee for fees disputes in any way.  In fact, the Sixth Circuit ultimately rejected the district court's various bases to deny the fee request and remanded for a redetermination of the issue under the Court's stated standards governing attorney fees in the context of a preliminary injunction. *Id.* at 601-06.

Similarly, in *Wolfel v. Bates*, 749 F.2d 7 (6th Cir. 1984), the Sixth Circuit merely observed that "appeals from awards of attorney's fees" are "the least socially productive type of litigation imaginable." *Id.* at 9 (cleaned up).  But the Court did not discuss capping fees or fee for fees disputes whatsoever.  Therefore, although these cases include dicta generally disfavoring protracted fee litigation, neither warrants capping fees under the circumstances in this case.

Defendant is generally correct, however, that courts routinely limit excessive fees incurred where attorneys spend an unreasonable amount of time on a fee dispute

as compared to the merits of a case. *See White v. Sports & Custom Tees, Inc.*, No. 22-10218, 2023 U.S. Dist. LEXIS 60898, at *24 (E.D Mich. Apr. 6, 2023) ("courts in this Circuit regularly exclude excessive hours spent on a motion for attorney fees"); *see also, e.g., Lorenzo v. Barr*, 806 F. App'x 431, 438 (6th Cir. 2020) (reducing hours where attorney's 22.7 hours for fee motion represented one third of the total hours).

In *White*, the Court stated that "[t]here is no bright-line rule capping the number of hours that can be spent on 'fees for fee awards.'" *White*, 2023 U.S. Dist. LEXIS 60898 at *24 (citation omitted). "Instead, the district court must determine the number of reasonable hours spent seeking a fee award." *Id.* Applying these principles, the *White* Court concluded that an attorney's post-judgment hours spent on a motion for fees, representing 46.7% of the total hours claimed by the plaintiff, were unreasonable and excessive. *Id.* at *25. The Court therefore reduced the plaintiff's 50-hour, post-judgment fee request to 15 hours. *Id.* But *White* and *Lorenzo* are both distinguishable from the present case.

Importantly, Defendant largely mischaracterizes the nature of Plaintiffs' fee request. Defendant asserts that "Plaintiffs expended 165.10 hours on the current fee litigation" (ECF No. 33, PageID.466), but this figure includes the time spend concerning the motion to enforce and efforts to reach a final settlement. And this

work clearly involved merits issues regarding substantive settlement terms rather than just a dispute over fees.

In contrast, attorney Benjamin Hinerfeld, who researched and drafted the instant motion, spent just 22.2 hours and billed $6,138.30[3] with respect to this fee dispute. This fee for fees amount is only about 8.5% of Plaintiffs' total fee request in this case and represents just 11% of the total hours Plaintiffs claim (and even lesser percentages when accounting for the agreed-to settlement funds and the hours worked before Plaintiffs moved to enforce).

Given these numbers, the Court concludes that the hours worked and amount billed specific to the instant fee dispute align with allowable awards in other cases and are generally reasonable in comparison to the totality of fees requested. *See White*, 2023 U.S. Dist. LEXIS 60898 at *25 (reducing allowable hours specific to the fee dispute to 14% of the total hours claimed); *Lorenzo*, 806 F. App'x at 439 (10% cap on fee for fees "is a reasonable proportion to apply in the present case").

The Court acknowledges certain post-settlement, line-item billings from Plaintiffs' other attorneys besides Hinerfeld that seemingly also relate to the instant fee dispute rather than the prior motion to enforce and efforts to reach a final

---

[3] Plaintiffs' reply claims that Hinerfeld's fee-related work amounts for $9,788.10 of their requested fees, which is the total he billed for work on this case. But accounting for the applicable 30% discount Hinerfeld applied to his services, $3,649.80 of his billings were for pre-settlement, non-fee-related work, like assisting with the motion to enforce and the December 2024 settlement conference before the Court.

10

settlement.[4]  But these billings are not substantial enough to change the conclusion that Plaintiffs' fee for fees request is generally reasonable in proportion to the totality of fees at issue in this case.  That said, although capping the fees per Defendant's request is unwarranted for the reasons given, the Court now moves to Defendant's alternate arguments that certain fees must be reduced as unnecessary, duplicative, and/or otherwise unreasonable.

If the fees are not capped, Defendant first argues they should be reduced by $9,480.00 for duplicate and unnecessary billing on Plaintiffs' simple motion to enforce.  Defendant specifically asserts that the combined 24 hours worked on this motion by attorneys Catherine Michael and Dorene Philpot was excessive given that (1) the motion involved simple facts and blackletter law; and (2) Plaintiffs ultimately agreed to substantially similar terms as those contested in the motion.  The Court disagrees.

In determining appropriate fees, courts "should exclude hours that are not reasonably expended." *Mehney-Egan v. Mendoza*, 130 F. Supp. 2d 884, 886 (E.D. Mich. 2001).  "Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary." *Id.*  "A fee is clearly excessive when, after a review of

---

[4] For example, attorney Catherine Michael billed $1,749 for 4.8 hours of work from March to May 2025, and this work seemingly involved discussions with the client regarding fees, as well as efforts to resolve this fee dispute with Defendant prior to filing a motion.

the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee." *Id.* (citation omitted).

Here, to the extent Defendant seeks to exclude *all* Michael's and Philpot's fees regarding the motion to enforce, this is certainly unwarranted. Again, Plaintiffs were at least partially successful in moving to enforce, so Plaintiffs' attorneys should be compensated for their efforts. Further, the attorneys provide sufficiently clear and detailed invoices supporting their joint efforts with respect to the motion to enforce, and both Michael and Philpot declare under penalty of perjury that their work was reasonable and warranted given the complexity involved in IDEA cases.

In contrast, Defendant provides no caselaw and only one paragraph of substantive analysis to support its proposed reduction of these fees. And though Plaintiffs' motion to enforce itself was fairly straightforward and relied on blackletter contract law, Defendant's response raised more nuanced, complex issues concerning whether its proposed additional terms were justified here and in typical IDEA cases by various interrelated authority under Sixth Circuit and Michigan caselaw, as well as Michigan's court rules.

For these reasons, the Court concludes that the attorneys' combined 24 hours of work with respect to the motion to enforce was reasonable and not excessive. Stated differently, Plaintiffs submitted documentation of sufficient detail and

probative value for the Court to determine with a high degree of certainty that these hours were actually and reasonably expended in this matter.

Defendant also argues that Plaintiffs' fees should be reduced by $3,673.50 to exclude billing for unrelated matters. Defendant specifically highlights various line-item bills from attorney Philpot, arguing that these should be excluded from the fee award as improperly vague and lacking any clear connection to the instant matter. The Court has reviewed these billing entries and disagrees.

"Although counsel need not record in great detail each minute he or she spent on an item, the general subject matter should be identified." *Imwalle*, 515 F.3d at 553 (cleaned up). Here, the entries at issue span from July 12, 2024, to November 25, 2024, between when Plaintiffs filed the motion to enforce and when the case ultimately settled, and all involve various communications between Philpot and the parent client.[5]

As an initial matter, to the extent Defendant argues that its highlighted entries must be excluded because they "have no clear connection to the motion to enforce fees" and could instead involve "ongoing legal advice for current educational matters" (ECF No. 33, PageID.469), the Court agrees with Plaintiffs' counterargument that it was reasonable for Philpot to continue advising the client on

---

[5] For example, Philpot billed $79 on July 15, 2024, for a "series of emails with [the] parent." (ECF No. 33-1, PageID.477).

13

substantive IDEA matters once the initial settlement broke down.  And though it remains possible that certain isolated client communications involved general legal advice regarding E.K.'s continuing education sufficiently unrelated to the matter(s) at issue here, the Court—particularly considering the analysis that follows—declines to micromanage Plaintiffs' individual line-item bills. *See Northeast Ohio Coalition for the Homeless v. Husted*, 831 F.3d 686, 703 (6th Cir. 2016) ("in assessing fees, district courts are not required to act as green-eyeshade accountants and achieve auditing perfection but instead must simply to do rough justice") (cleaned up).

Next, the Court acknowledges that the various entries regarding Philpot's client communications involve little, if any, information to show the subject matter of the communications themselves. *See supra* footnote 5.  More importantly, though, Philpot's billings show roughly 20 pages of detailed, itemized records that specify, for each entry, the date of billing, the specific work completed, and the time (in tenths of an hour) billed for the task.  The entries are listed separately, with some days including as many as five, not lumped together.  And all the client communications at issue critically occurred contemporaneous with Plaintiffs moving to enforce and the efforts to reach a final settlement.

Given these circumstances, the Court concludes that Plaintiffs submitted documentation of sufficient detail and probative value to determine with a high degree of certainty that the hours for Philpot's client communications were actually

14

and reasonably expended in this matter (i.e., that the communications sufficiently involved the motion to enforce, reaching a settlement, or fees). *See Imwalle*, 515 F.3d at 554 ("Although some of the time entries in counsel's billing statement provide only the briefest description of the task completed, we have held that explicitly detailed descriptions are not required.  Counsel's billing entries, when read in the context of the billing statement as a whole and in conjunction with the timeline of the litigation, support . . . that the hours charged were actually and reasonably expended in the prosecution of the litigation.") (citation omitted).  Indeed, the billing records at issue here are materially similar to those in *Imwalle*, which adequately supported the fee request despite some vague entries "such as 'Conference with,' 'Research,' 'Review file,' 'Review documents,' etc." *Id.* at 553-54.

Lastly, Defendant argues that Plaintiffs' fees should be reduced by $9,788.10 to exclude fees to pay the third attorney Plaintiff unnecessarily added in this case. According to Defendant, there is no reasonable basis for Hinerfeld's participation in this matter given the other two attorneys' experience litigating IDEA and related fee matters across multiple circuits, and his participation unreasonably inflated Plaintiffs' fees.

Plaintiffs counter that the three attorneys all worked to reduce the fee for fees portion of their request, efficiently dividing the labor between one another with no duplication of work, and that Hinerfeld was enlisted because of his experience as a

federal litigator.  Concerning this latter point, attorney Michael declares she enlisted Hinerfeld, "an experienced federal litigator in matters related to IDEA fees, to assist with the fees litigation in this Court" because, "given the size and complexity of the fees issue in this matter, it appeared to be the responsible and ethical decision to retain experienced counsel to assist with the federal litigation regarding attorneys' fees."

Michael relatedly declares that (1) she "do[es] not focus in federal fee litigation under the IDEA," and (2) the "vast majority" of special education due process complaints she has been involved in over a 25-year career in the area "resovl[ed] short of an educational due process hearing, whether . . . . through mediation or settlement negotiations." (ECF No. 32-1, PageID.357-58).  Hinerfeld, for his part, declares that Michael enlisted his help because of his "general familiarity with IDEA practice in federal courts" and "specific experience filing federal fee actions nationwide." (ECF No. 32-3, PageID.374).

As discussed, the $9,788.10 Defendant seeks to exclude here is the total Hinerfeld billed for his work on this case.  But $3,649.80 of Hinerfeld's billings were for pre-settlement, non-fee-related work, like assisting with the motion to enforce and the December 2024 settlement conference. *See supra* footnote 3.  The remaining $6,138.30, in contrast, was all billed for Hinerfeld's work researching, drafting, and

16

filing the instant fee motion, which took place from May 27, 2025, through June 6, 2025.

Notably, Michael only billed a total of $60 for .4 hours of essentially administrative work on the case from April 17, 2025—when the parties were unable to settle the instant fee dispute and it became clear a motion would be necessary—onward. Michael's records show she continued working on the fee dispute during this time but did not charge for the rest of these services. And Philpot's billed work during this same time was mostly limited to (1) setting a briefing schedule for Plaintiffs' planned fee motion; (2) communications regarding the case with opposing counsel, co-counsel, and the client; (3) drafting the declaration in support of her own specific fees; and (4) reviewing Hinerfeld's draft fee motion and suggesting changes.

Concerning only the fee dispute for now, it is therefore clear to the Court that the three attorneys reasonably and appropriately divided their work, with (1) Philpot and Michael consistently handling client communications and other more administrative tasks concerning the fee dispute, and (2) Hinerfeld drafting the motion for fees once settlement was unsuccessful. Although there was some overlap with both Michael and Philpot reviewing and suggesting edits to Hinerfeld's draft motion, this overlap was limited and thus reasonable under the circumstances. Relatedly, to the extent Philpott and Michael may have duplicated certain work, any

17

such concern is mollified since Michael largely did not charge for her work after April 17, 2025.

Further, Hinerfeld charged the same rate as the other attorneys but applied a 30% discount for his services, so the overall fees would actually be higher if Michael and/or Philpot had drafted the fee motion (assuming they could complete the work in the same amount of time).  For all these reasons, the Court (1) rejects Defendant's argument that Hinerfeld's participation unreasonably inflated Plaintiffs' fees with respect to the fee dispute and (2) declines to exclude the $6,138.30 Hinerfeld billed for this work.  Again, Plaintiff has proven these fees were actually and reasonably expended in this matter.  However, the Court concludes that a portion of the remaining $3,649.80 of Hinerfeld's billings, which involved pre-settlement, non-fee-related work, covered work that was unreasonably duplicative of the other attorneys' efforts.

First, Hinerfeld billed $2,460.85[6] for (1) work in July 2025 on Plaintiffs' reply regarding the motion to enforce and (2) work in December 2024 on Plaintiffs' mediation statement.  Like with the fee motion, the attorneys' records adequately show they reasonably and appropriately divided their work on these issues to avoid unnecessary and duplicate billing.  For example, Hinerfeld took the lead in drafting

---

[6] These figures incorporate the 30% discount Hinerfeld applied to his total billings.

Plaintiffs' reply, with Michael and Philpot only providing edits and coordinating on the overall strategy/arguments.

However, the Court fails to see why it was necessary for Hinerfeld to attend the December 2024 settlement conference when Plaintiffs were already represented by two competent attorneys. This is particularly concerning where Hinerfeld's only subsequent work came months later and was limited to drafting the motion for fees. In the Court's view, one or both of the other attorneys could have informed Hinerfeld of any issues from the conference relevant to his eventual fee motion, saving the cost of Hinerfeld's direct participation. Accordingly, the Court excludes the $1,188.95 Hinerfeld billed for this work because it was redundant, unnecessary, and—therefore—not reasonably expended.

In sum, Plaintiff has adequately supported with sufficiently detailed records and supporting declarations that the vast majority of their requested fees were actually and reasonably expended in this matter. But the request will be reduced by $1,188.95 for the reasons just given.

\* \* \*

For the reasons given, IT IS HEREBY ORDERED that Plaintiffs' motion for attorney fees (ECF No. 32) is GRANTED IN PART AND DENIED IN PART.

19

IT IS FURTHER ORDERED that Plaintiffs are entitled to $71,068.65 in attorney fees.

SO ORDERED.

Dated: February 26, 2026     s/Robert J. White
            Robert J. White
            United States District Judge